**SIGNET GRAPHIC PRODUCTS, INC., Appellant,**

v.

**The FIRST NATIONAL BANK OF CLAYTON, Respondent.**

**No. 37990.**

Missouri Court of Appeals, St. Louis District, Division Four.

July 25, 1978.

Motions for Rehearing and/or Transfer Denied Sept. 15, 1978.

Application to Transfer Denied Oct. 10, 1978.

---

P. Terrence Crebs, John P. Walsh, Gallop, Johnson, Godiner, Morganstern & Crebs, St. Louis, for appellant.

Robert C. Jones, Harold A. Tzinberg, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for respondent.

ALDEN A. STOCKARD, Special Judge.

Plaintiff has appealed from an adverse judgment in its action against The First National Bank of Clayton to recover money lost by it when the Bank cashed checks payable to plaintiff and deposited the proceeds in an account maintained by its employees as a "welfare fund."

Plaintiff was originally incorporated under the name of Setlich Sign Co., Inc. in 1954, and after a series of changes of name and sales of assets the present plaintiff came into corporate existence and became the owner of the business.

Since 1959 the employees of Setlich Sign Co., and its successors, maintained an unincorporated association under the name of the Setlich Sign Co. Welfare Organization (hereafter referred to as the "Association"). Its purpose was social in nature, and its funds consisted of the profits from sales made from vending machines located in the plant. The employees, as members of the association controlled the expenditures.

At no time did plaintiff contribute any money to the Association's fund or exercise any control over it.

In 1959 the Association opened a checking account at defendant Bank under the name of "Setlich Sign Co. Welfare Organization." A form, apparently furnished by the Bank, entitled "Authority of Lodge, Association or Other Similar Organization to Open Deposit Account," was signed by Loretta N. Dimond, as secretary, and recited that at a regular meeting of the officers of the "Setlich Sign Co. Welfare Organization" Eu-

gene D. Oehlert was elected president, and Loretta N. Dimond was elected Secretary-Treasurer, and that under the rules of the Association funds on deposit to the credit of the Association could be withdrawn on the signature of either.

On April 21, 1966, Mr. Oehlert, who apparently was still president of the Association, sent a letter to the Bank enclosing a check to be deposited in the name of "Signet Graphic Products, Inc. (Welfare Organization Fund)." In the letter he stated that the "name of the new account [was] to be changed from Setlich Sign Co., Inc." Apparently some question was raised by the Bank because four days later Mr. Oehlert sent a second letter in which he referred to the same check and gave the same instructions concerning it, but added that his signature was to be the only authorized signature. On April 26, the account card on file at the Bank was changed to show the name of the Association to be "Signet Graphic Products, Inc. Welfare Organization Fund," and the account was given a new number; 64–109–1.

In June or July 1967 Kay German was employed by plaintiff as bookkeeper. At a meeting of the members of the Association held in September of that year she was designated as the person to "take care of the funds." In response to a telephone call the Bank sent to her what was labeled "Authorized Signature Card." Although the Bank had on file the previously executed form for an Association, the card sent was designated as one to be used by a corporation. Kay German typed thereon the name "Signet Graphic Products, Inc.— Welfare Organization Fund." There appears on the card the signatures of two persons: Marvin L. Stott who is shown to have the title of "Treasurer," and Kay German whose title is shown to be "Bookkeeper." The titles were typed in by Kay German, but neither person held such position with the Association. Instead, the titles shown refer to their respective positions with plaintiff.

With the signature card, the Bank also sent a printed form entitled "Resolutions of Board of Directors Re: Checking Account." The blank spaces were filled in by Kay German, and in its material parts provided as follows:

The undersigned hereby certifies to THE FIRST NATIONAL BANK OF CLAYTON, CLAYTON, MISSOURI, that he is the Secretary of Signet Graphic Products, Inc., a corporation, duly organized and existing and now in good standing under the laws of the State of Missouri; that the following is a complete, true and correct copy of certain resolutions duly adopted by the board of directors of said corporation at a meeting of said board duly called and held on the 20 day of September, 1967, in accordance with the Articles of Incorporation and By-Laws of said corporation, at which meeting a quorum was present and acted throughout, all as appear on the minutes of such meeting, which resolutions are still in full force and effect;

RESOLVED:

1. That The First National Bank of Clayton, Clayton, Missouri, be and hereby is designated as a depository of this corporation, subject to the terms, conditions, rules and regulations of said Bank from time to time in effect governing commercial checking accounts, under the name and style:

Signet Graphic Products, Inc.—Welfare Organization Fund
(Name of Account)

2. That funds in said account with said Bank shall be subject to withdrawal or debit from time to time upon checks or orders for the payment of money when signed in behalf of this corporation by any _____ One _____ of the following:
(one, two or more)

_____ Treasurer _____

_____ Bookkeeper _____
(Titles of Officers not Individual Names)

and countersigned by any of the following:

_____

_____

3. That The First National Bank of Clayton, Clayton, Missouri is hereby directed and authorized to honor, pay and charge against said account any and all checks or orders for the payment of money when signed as provided in 2 above, without any duty of inquiry as to the circumstances of issue or disposition of the proceeds and regardless of to whom such instruments are payable or endorsed, including instruments payable or endorsed to any officer, or agent of the corporation, or any person authorized to sign, or to bank, or bearer, or cash, or otherwise, and tendered for cashing, or in payment of the individual obligation of such officer, or agent, or person signing, or for deposit to his personal account; and

4. That any officer or agent of the corporation is authorized to endorse for deposit, or collection, or negotiation any and all checks, drafts, notes, bills of exchange, and other orders or instruments for the payment of money, belonging to or coming into the possession of the corporation, which endorsements may be made in writing or by stamp or otherwise, and without designation of the person so endorsing; that any such instrument may be deposited without endorsement, or the endorsement of the Corporation may be supplied by Bank, in either of which events the liability of this Corporation thereof shall be the same as if actually endorsed by this corporation; that all items delivered to said Bank shall be subject to the provisions of the Bank Collection Code of Missouri; that each of the officers and agents designated above in the second paragraph, or from time to time hereafter designated, to sign for the corporation, by and hereby is further authorized to act for and in behalf of this corporation in the transaction of any and all other business arising from time to time in connection with or involving said account, and to sign and deliver such instructions or instruments in relation thereto and consistent herewith as he may deem advisable; and

5. That the Secretary or other officer of this corporation be, and hereby is, authorized and directed to and shall certify to The First National Bank of Clayton, Clayton, Missouri, the names of the present officers of this corporation and other persons authorized to sign for it and the offices, respectively, held by them, together with specimens of their signatures; and he shall from time to time hereafter, as changes of officers and agents may occur, immediately certify to or notify Bank of such changes and the name of any new officer or agent together with a specimen of his signature; and said Bank is authorized to rely and act upon such certificate or notice and to honor any instrument signed by any new officer(s) or agent(s) in respect of whom it has received such certificate or notice, with the same force and effect as if said officer(s) or agent(s) were named in the foregoing resolution, and Bank shall be indemnified and saved harmless by this corporation from any claims, demands, loss, or expense resulting directly or indirectly by reason of its honoring the signatures of any such officer(s) or agent(s) so certified, or refusing to honor any signature not so certified; and

6. That these resolutions shall remain in full force and effect, and Bank is authorized and directed to continue to rely hereon and act hereunder, regardless of any other notice to the contrary, until Bank shall have received a certified copy of resolutions duly adopted by the board of directors of this corporation revoking, amending or otherwise changing these resolutions.

The undersigned further certifies that the present officers of this corporation, and the offices respectively held by them, are as follows:

| NAME | TITLE |
| --- | --- |
| Robert J. Kerdasha | President |
| Wallace W. Weeks | Vice-President |

| NAME | TITLE |
|---|---|
| Marvin L. Stott | Treasurer |
| Richard O. Funsch | Secretary |

IN WITNESS WHEREOF, I have subscribed my name as Secretary and affixed the seal of said corporation this 21 day of September, 1967.

(SEAL)

[Signed] Richard O. Funsch
Secretary

_____

After Mr. Stott and Mrs. German signed the signature card, the completed form containing the resolution was sent to Mr. Richard O. Funsch, plaintiff's secretary. He testified that he did not know of the existence of the association fund, and that Mr. Stott called him and stated that there was "a special fund * * * derived from vending machines that were on the premises, and the funds from these vending machines were used for Christmas parties and to buy flowers for sick employees, and that there had been a change in personnel or some circumstance * * * and they wanted to change the signatories on this welfare organization fund." He further testified that Mr. Stott told him that he had had the form prepared; that he asked Mr. Funsch to sign it certifying that the people there named were the officers of the company; that Mr. Stott brought the form or mailed it to him, and he signed it and affixed the corporate seal at Mr. Stott's request. The signature card and executed form containing the resolution were returned to defendant Bank. Mr. Funsch did not discuss the matter with Mr. Robert J. Kerdasha, the president of plaintiff, or with anyone at the Bank. Mr. Kerdasha, who was the sole director and sole stockholder of plaintiff, at no time authorized the opening of an account, or the continuation of an account for plaintiff at defendant Bank, and he had no knowledge of the existence of the employees' association or its checking account until June or July of 1973.

Mr. Stott testified that he was "officially the treasurer" of plaintiff, but that he did "estimating and the purchasing" for plaintiff, and as an employee he was a member of the welfare association. After June 1967 and until the meeting in September when Kay German was designated to look after the fund, he signed the checks drawn on the fund. He signed the signature card with Kay German, but he stated that while it was "possible" he talked with Mr. Funsch about the resolution form, he had no recollection of having done so.

Account No. 64–109–1 remained in the name of Signet Graphic Products, Inc. Welfare Organization Fund, and it was essentially dormant until April 1971. It was at that time that Kay German began a program whereby over a period of a few years she embezzled more than $240,000.00.

Kay German testified that she was the bookkeeper for plaintiff, and that her duties consisted of "taking care of the books, payroll records, tax returns and so forth." She did not handle the billing of clients of plaintiff, but she received all the checks from clients payable to plaintiff which she posted in the accounts receivable book. Checks that were not deposited by her in the account in defendant Bank were deposited in a New York or Evansville, Indiana bank. She also received the monthly bank statements for Account No. 64–109–1 from defendant Bank.

The monthly statements from defendant Bank prior to November 1971 carried the name "Signet Graphic Products Inc. Welfare Organization Fund c/o Mr. Lewis I. Davis." However, Mr. Davis had left plaintiff's employment before Kay German started to work there. For some undisclosed reason, starting with the statement

dated November 18, 1971, the name carried on the account was "Signet Graphic Products, Inc. c/o Mr. Lewis I. Davis," but the account number remained the same. Kay German testified that she did not have anything to do with bringing about this change in the name of the account, but that the statements "came in that way." The Controller of the Bank could not explain the change except that it may have resulted when the Bank converted to its own computer system. The Bank did not produce any authorization for the change in the name of the account. At approximately the same time the printed name on the checks and on the deposit slips was changed to "Signet Graphic Products, Inc." There was no explanation as to how this came about.

During the time that the account still carried the name of "Signet Graphic Products, Inc. Welfare Organization Fund," Kay German took checks payable to Signet Graphic Products, Inc., and made thereon in her handwriting the following endorsement:

For Deposit Only
Signet Graphic Products
WOF
Acct # 64–109–1

After the name of the account on the Bank records was changed, the endorsements were as follows:

For Deposit Only
Signet Graphic Products
Acct # 64–109–1

The trial court entered findings of fact which in summary form included the following:

1. In 1959 an unincorporated association known as Setlich Sign Co. Welfare Organization, constituting the employees of plaintiff's predecessor in business established a checking account with defendant Bank which was still in existence on September 20, 1967.

2. On September 20, 1967 plaintiff, by resolution of its Board of Directors, converted the unincorporated association account to a corporate account of plaintiff, even though no change was made in the name of the account and even though the account number also remained the same.

3. The "Corporate Resolutions" authorized funds to be withdrawn on the signature of either plaintiff's treasurer or bookkeeper.

4. Defendant Bank had a right to rely on the content of said resolutions and it did so rely.

5. By virtue of the "Corporate Resolutions" and plaintiff's office procedures, Kay German had authority to endorse and deposit into the account all checks belonging to plaintiff.

6. "Said Corporate Resolutions converting account 64 109.1 to a corporate account of plaintiff" were executed and delivered to defendant with the active participation and cooperation of plaintiff's treasurer, secretary and bookkeeper, and defendant Bank had a right to rely on the content of said resolutions, and did so rely.

7. By virtue of the "Corporate Resolutions" Kay German had express authority from plaintiff to endorse and deposit into account 64–109–1 any and all checks belonging to plaintiff.

8. Defendant Bank acted in good faith and according to reasonable commercial standards in accepting for deposit and crediting to account 64–109–1 checks drawn to plaintiff's order and endorsed for "deposit only" even though the payee named on the checks was "Signet Graphic Products, Inc." and not "Signet Graphic Products, Inc.—Welfare Organization Fund," and it further acted in good faith and in compliance with reasonable commercial standards in allowing a reprinting of checks and deposit slips deleting the name "Welfare Organization Fund."

9. Plaintiff's treasurer and secretary did not intend to authorize Kay German to

deposit checks drawn to the order of plaintiff into account 64–109–1, but the authority to do so was expressly given to her by the resolution contained in the form supplied by the Bank. The misplaced trust contributed to the embezzlement of plaintiff's fund, as did the office procedure of plaintiff relative to the handling of billings, books of account, and checks for payment of accounts receivable of plaintiff.

We have here a "comedy of errors" with tragic results.

Plaintiff vested Kay German (a previously convicted embezzler) with authority to deal with its daily transactions, but without adequate supervision or control, and in a manner not consistent with acceptable business practice. She made all bank deposits and endorsed all checks received by plaintiff, but plaintiff negligently failed to establish supervisory control over or investigate her activity. The Bank, although knowing or being charged with knowledge that account 64–109–1 was that of an association of employees, wrongfully, or at least negligently, sent to Kay German a signature card and a form for resolution designed for use by a corporation in establishing an account at the Bank. Kay German then filled in the blank places in the corporate form using the name of plaintiff as the depositor of an account under the name of "Signet Graphic Products, Inc.—Welfare Organization Fund," and authorizing the treasurer and bookkeeper of plaintiff, not of the Association, to write checks on the account. By virtue of the resolution set forth in the corporate form furnished by the Bank any officer or agent of plaintiff was authorized to endorse for deposit in the described account any and all checks belonging to plaintiff, and the endorsements could be in writing or by stamp and without designation of the person so endorsing. The secretary of plaintiff then signed the form containing the resolutions, affixed the seal of plaintiff, and the completed form was returned to the Bank. Subsequently the Bank, without justification and certainly without any explanation, changed the name of the account to "Signet Graphic Products, Inc.," leaving off "Welfare Organization Fund," and then permitted or caused checks and deposit slips to carry only that name. (While this appears to have been negligence on the part of the Bank, we fail to see how it in any way contributed to the loss sustained by plaintiff.) Finally, the embezzlement escaped detection until Kay German confessed to her private attorney who advised plaintiff.

Account No. 64–109–1 was that of the employees' Association, and neither the "Corporate Resolutions" nor the change of the name of the account by the Bank on its records and on the checks and deposit slips changed its status. But there is no claim that any monies of the Association were lost by reason of the acts of Kay German and the Bank. Also, there was in fact no meeting of the Board of Directors of plaintiff on September 20, 1967, as recited in the "Corporate Resolutions." Mr. Kerdasha owned all the stock of plaintiff and was its sole director. He had no knowledge of the existence of the bank account for the welfare fund, but the plaintiff here is the corporation; not Mr. Kerdasha as an individual.

We do not understand what was meant by the finding that plaintiff *converted* the then existing unincorporated association account to a corporate account of the plaintiff. The endorsements made by Kay German were not forgeries in the usual meaning of that term. § 400.3–419 RSMo 1969. She had authority to endorse for deposit all checks payable to plaintiff. The account remained that of the Association to which the officers of plaintiff authorized funds of plaintiff to be deposited. However, we agree with the result reached by the trial court for the reasons hereafter stated.

As noted, plaintiff is a corporation, and as such it acts only through its authorized officers, agents and employees. *Peak v. W.*

*T. Grant Company*, 386 S.W.2d 685 (Mo. App.1964); *Presley v. Central Terminal Co.*, 142 S.W.2d 799 (Mo.App.1940). There is no contention that Mr. Stott was not the treasurer or that Mr. Funsch was not the secretary of plaintiff, or that either did not possess and exercise the usual functions and duties of his office. Also, Kay German was the bookkeeper of plaintiff, and an agent of plaintiff in that her regular duties included the endorsement for deposit of all checks payable to plaintiff. Therefore, when the Bank received the completed corporate form of resolutions, signed and sealed by the secretary of plaintiff, even though that form had been improperly furnished to Kay German by the Bank, it was entitled to rely on the apparent authority therein expressed, *Willsey v. W. C. Porter Farms Company*, 522 S.W.2d 29 (Mo.App.1975); *S. S. Silberblatt, Inc. v. Seaboard Surety Company*, 417 F.2d 1043 (8th Cir. 1969), absent some circumstance which would result in such reliance to be contrary to the usual and reasonable banking practices, and there is substantial evidence that such reliance was not contrary in that respect.

The resolution expressly authorized "any officer or agent" of plaintiff to endorse for deposit in Account No. 64–109–1 all checks for the payment of money to plaintiff, and it expressly directed the Bank to honor and pay any and all checks drawn on that account when signed by the treasurer or bookkeeper of plaintiff. We do not find that the Bank did anything pertaining to Account No. 64–109–1 that it was not specifically authorized or directed to do by officers and agents of plaintiff who were clothed with apparent authority.

We conclude that the judgment of the trial court is supported by substantial evidence, and that it does not erroneously declare or apply the applicable law.

The judgment is affirmed.

DOWD and SNYDER, JJ., concur.